# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Rudy Saxon, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 6:10-1144-RMG |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation on June 5, 2013, recommending that the Court affirm the Commissioner's decision. (Dkt. No. 28). The Plaintiff filed objections to the Report and Recommendation and the Commissioner filed a reply. (Dkt. Nos. 30, 37). As more fully set forth below, the Court reverses the decision of the Commissioner and remands for further action consistent with this order.

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo*

determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the applicant is engaged in substantial gainful work. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has any "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant has one

or more severe impairments, the Commissioner proceeds to Step Three, which involves a determination whether any impairment of the claimant satisfies any one of a designated list of impairments that would automatically render the claimant disabled. *Id.* § 404.1520(a)(4)(iii). Where the claimant has multiple impairments but none satisfy independently the criteria for a listed impairment, the Commissioner is obligated to consider the combined effect of the various impairments and determine whether they are the medical equivalent of the criteria of a listed impairment. 42 U.S.C. § 423(d)(2)(B); *Walker v. Bowen*, 889 F.2d 47, 49-50 (1989); 20 C.F.R. § 416.926.

If the claimant does not have a listed impairment or the medical equivalent of a listed impairment, the Commissioner must proceed to Step Four, which involves an assessment of the claimant's Residual Functional Capacity ("RFC"). *Id.* § 404.1520(a)(4)(iv). This requires assessment of the claimant's ability "to meet the physical, mental, sensory, and other requirements of work." *Id.* § 404.1545(a)(4). In determining the claimant's RFC, the Commissioner "must first identify the individual's functional limitations or restrictions" and provide a narrative "describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8P, 61 Fed. Reg. 34474, 34475, 34478 (July 2, 1996).

Once the claimant's RFC is determined, the Commissioner must assess whether the claimant can do his past relevant work. 20 C.F.R. §§ 404.1520(4)(iv), 1545(a)(5)(i). If the claimant, notwithstanding the RFC determination, can still perform his past relevant work, he is deemed not to be disabled. If the claimant cannot perform his past relevant work, the Commissioner then proceeds to Step Five to determine if there is other available work in the

national economy he can perform in light of the RFC determination. *Id.* § 404.1520(a)(4)(v).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. *Id.* § 404.1545. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). The Commissioner "[g]enerally . . . give[s] more weight to opinions from . . . treating sources" based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Further, the Commissioner "[g]enerally . . . give[s] more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." *Id.* § 404.1527(c)(1).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of specifically identified factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician is a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996).

## Discussion

The claimant's application for disability benefits has followed an unusually protracted process dating from the initial application in August 2004. In a previous appeal on this same claim, the Honorable Sol Blatt, Jr., Senior United States District Judge, reversed the Commissioner's denial of disability benefits because the decision of the Administrative Law Judge ("ALJ") had failed to consider and explain the combined effects of Plaintiff's multiple severe impairments, which included degenerative disc disease, a left total hip replacement, and schizophrenia. *Saxon v. Astrue*, 662 F. Supp. 2d 471, 479-80 (D.S.C. 2009). Referencing the Fourth Circuit's seminal decision in *Walker v. Bowen*, Judge Blatt emphasized the need for the ALJ to "adequately explain his or her evaluation of the combined effects of the impairments" rather than "fragmentize them." *Id.* at 479.

On remand, Plaintiff was awarded disability benefits from the date of his 50th birthday, May 8, 2009, on the basis that his impairments limited him to sedentary work and that upon reaching 50 years of age he was deemed under controlling Social Security law to be disabled. Transcript of Record ("Tr.") 855. In regard to the claimant's application for disability benefits from the alleged date of onset, August 7, 2004, until May 7, 2009, the ALJ concluded that Plaintiff was not disabled and was capable of performing sedentary work. Tr. 851-54. The ALJ again addressed the three severe impairments relating to Plaintiff's spinal disc disease, hip replacement, and schizophrenia. Each was addressed separately and determined not to satisfy the criteria for the listings applicable to them. Tr. 850-51. However, with the exception of a passing reference to considering the "claimant's severe impairments, or a combination thereof," there was no specific analysis or discussion of the cumulative effect of the claimant's three severe

impairments. *Id.*

This failure to consider and explain the cumulative effects of these severe impairments, beyond ignoring the unambiguous instructions of Judge Blatt and the clear statutory and regulatory mandate to do so, appears particularly significant here because the Plaintiff's severe disc disease, chronic pain secondary to his left hip replacement, and persistent schizophrenia, including audio and visual hallucinations and paranoia, certainly present the type of combined effects of multiple impairments that could constitute the medical equivalent of a listing or might otherwise satisfy the legal requirements for disability under the Social Security Act. Tr. 655, 575, 576, 750, 797, 800, 806-07, 999, 1001, 1026, 1028, 1035-36, 1040. The failure of the ALJ to consider these severe impairments in combination and to explain his decision, without question, mandates reversal of the Commissioner's decision.

The ALJ's evaluation of certain medical evidence contained in the record was also legally improper and should be corrected on remand. First, in evaluating Plaintiff's potential 1.04 Listing, relating to disorders in the spine, the ALJ found that "[e]vidence of nerve root compression is not described in the record." Tr. at 850. In fact, an August 23, 2006 MRI explicitly describes nerve root compression at L2-3 and at L5-S1. Tr. 806-07. Thus, the ALJ's finding regarding no record evidence of nerve root compression is not supported by substantial evidence.

Second, the ALJ concluded that the claimant's Global Assessment of Functioning ("GAF") scores of 45 would be given "little weight" because in the ALJ's opinion such a score would be incompatible with the claimant's lack of depression, ability to live independently, follow medical instructions, and keep medical appointments. Tr. 853. The GAF is a clinical

-6-

assessment provided by the treating medical provider and involves an evaluation of the patient's "psychological, social, and occupational functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 30 (4th ed. 1994). As such, the determination of a patient's GAF score involves the exercise of special medical expertise and clinical judgment. A score of 45 can reflect a "serious impairment" in "social, occupational, or school functioning" and can be associated with a patient being "unable to keep a job." *Id.* at 32.

In this case, two different board certified examining and treating psychiatrists over a three-year period, dating from August 2006 through August 2008, concluded that Plaintiff's GAF score was 45. Tr. 799, 99-1001, 1040-41. The diagnoses of these treating physicians are supported with findings regarding the Plaintiff's schizophrenia and paranoia and appear to be the type of medical opinions entitled to a high degree of deference under the Treating Physician Rule. No other GAF score was provided in the record during this period.

Faced with this overwhelming evidence in the record of the patient's GAF score of 45, the ALJ elected to discard these opinions of treating physicians based on *his* judgment that Plaintiff's level of functioning was higher than a GAF score of 45. However, the ALJ may not substitute his lay opinion on a matter of medical opinion for the opinions of the claimant's treating physicians. Any medical opinions should be evaluated pursuant to the standards set forth in § 404.1527(c), the Treating Physician Rule, and based on the record evidence. On remand, the ALJ should evaluate the claimant's GAF score in light of controlling legal standards set forth herein.

The Court notes that the errors of the ALJ regarding the claimant's nerve compression and GAF score have the effect of minimizing the degree of impairment in regard to the

claimant's spinal cord and mental health disorders and could be read to be in furtherance of an effort to justify a continued finding against disability. The failure of the ALJ to follow Judge Blatt's clear instructions to consider and explain the claimant's severe impairments in combination could also be seen in the same light. In addressing this matter on remand, the Commissioner should make every effort to evaluate the evidence in this claim in accord with her obligation to fairly consider all of the claimant's evidence and to apply controlling legal standards without regard to the likely outcome or consequences.

Plaintiff has requested that in light of the protracted nature of these proceedings that the Court reverse the decision of the Commissioner and award benefits. (Dkt. No. 30 at 17-18). The Court has, quite frankly, carefully considered this request because of the ALJ's clear failure to explicitly consider and address the combined effects of Plaintiff's severe impairments, as directed by Judge Blatt, in the earlier reversal and remand, and the significant record evidence supporting Plaintiff's claim that the combined effect of his severe mental illness and orthopaedic impairments render him disabled under the Social Security Act during the time period at issue. While the Court certainly has the authority under certain circumstances to reverse and award benefits, the preferred course is to reverse and allow the Commissioner to address the matter on remand. However, since this claim has been pending nearly 9 years, the Court directs the Commissioner to conduct a hearing and issue a decision of the ALJ within 90 days of the entry of this order. Should a further appeal to the district court be necessary, Plaintiff should designate this case as related on the Civil Cover Sheet. The Court hereby reverses the decision of the Commissioner pursuant to Sentence Four of 43 U.S.C. § 405(g) and remands in accord with the instructions set forth above.

AND IT IS SO ORDERED.

                                                Richard Mark Gergel
                                                United States District Judge

August 9, 2013
Charleston, South Carolina